IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **RAMARAO NAIDU,** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 23-CV-3179 |
| | : | |
| **PNC BANK, NATIONAL ASSOCIATION,** | : | |
| Defendants. | : | |
| | : | |

## AMENDED MEMORANDUM OPINION

**Goldberg, J.**                                                                                          **April 5, 2024**

Plaintiff Ramarao Naidu was the victim of fraud when more than $200,000 was withdrawn from his PNC bank account by two of Plaintiff's former employees who forged checks with his name. Plaintiff has sued PNC Bank, N.A. ("PNC") for breach of contract, negligence, and conversion.

PNC now moves to dismiss these claims. For the following reasons, I will grant the Motion in part and deny it in part.

### I. FACTUAL BACKGROUND

According to the Complaint, Plaintiff Ramarao Naidu had a personal checking account at Defendant PNC. Beginning in May of 2021, two of Mr. Naidu's former employees—Danielle King and Micayla Zeigler—began forging Plaintiff's name on PNC checks from his account made payable to themselves, West Chester University Foundation, and Sallie Mae (the "Forged Checks"). The Forged Checks consisted of seven paper checks and two PNC electronic checks in the total amount of $204,710. (Compl. ¶¶ 5–8.)

Plaintiff, who is in his late eighties and in declining health, did not learn about the Forged Checks until about four to five months after the fraud began. In October 2021, Plaintiff, through his attorney, communicated with the Fraud Department of PNC Bank and made a claim for reimbursement of the losses he sustained. In support of his claim, Plaintiff's counsel submitted a Forged Check Affidavit to PNC, with a cover letter dated October 7, 2021. The Affidavit provided detailed information about the Forged Checks, including check numbers, dates, amounts, and payees. (Id. ¶¶ 9–11.)

Plaintiff contends that PNC never adequately warned him about how to avoid being the victim of forgery or what steps he could have taken to detect forged check activity. Plaintiff alleges that he reasonably expected that PNC was responsible for fraud monitoring and prompt notification to him about fraudulent activity on his account. Plaintiff also claims he reasonably expected PNC to credit him the total amount of the Forged Checks but was nonetheless denied reimbursement. (Id. ¶¶ 12–15.)

Plaintiff filed suit against PNC in state court, and, on August 17, 2023, the case was removed here. The Complaint sets forth cases of action for breach of contract (Count I), negligence (Count II), and conversion (Count III). PNC now moves to dismiss the Complaint.

## II.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted). "[T]hreadbare recitals of the elements of a cause

2

of action, supported by mere conclusory statements, do not suffice" and "only a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.  Id.

The United States Court of Appeals for the Third Circuit has detailed a three-step process to determine whether a complaint meets the pleadings standard.  Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014).  First, the court outlines the elements a plaintiff must plead to state a claim for relief.  Id. at 365.  Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth."  Id.  Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'"  Id. (quoting Iqbal, 556 U.S. at 679).  The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. (quoting Iqbal, 556 U.S. at 679).

### III.     DISCUSSION

#### A.     **Breach of Contract Claim**

PNC first argues that Plaintiff's breach of contract claim set forth in Count I is time-barred by the notice requirements of the Account Agreement.  (Def.'s Ex. C at 8.)[1]  The improper charges described in the Complaint began in May 2021.  (Compl. ¶ 10.)  According to the Account Agreement between the parties, statements are sent to an account owner monthly, meaning that

---

[1] I may consider the terms of the Account Agreement without converting the Motion to Dismiss into a motion for summary judgment because it is integral to and expressly relied upon in the Complaint.  See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Plaintiff would have, at the latest, learned of the fraudulent charges in June 2021, when he received an account statement. (Def.'s Ex. C at 8 (explaining that monthly account statements are sent to the account owner).) The Account Agreement required Plaintiff report to PNC any unauthorized charge against the Account "within thirty (30) calendar days of the mailing date of the earliest statement describing the charge." (Def.'s Ex. C at 8.) Nonetheless, Plaintiff first communicated with PNC's Fraud Department in October 2021.

PNC's argument is premature for two reasons. First, although PNC references the Account Agreement, which provides that statements will be provided monthly, PNC does not produce the actual account statements that reflect precisely when Plaintiff was notified of the fraudulent charges at issue. Under Pennsylvania's Commercial Code, in order to trigger a notice period, the bank must establish that the "information in the statement of account [is] sufficient to allow the customer reasonably to identify the items paid. The statement of account provides sufficient information if the item is escribed by item number, amount and date of payment." 13 Pa. Cons. Stat. § 4406(a). Absent such account statements showing when the proper information was provided to Plaintiff, PNC cannot, at this early stage, establish that his October 7, 2021 notice to PNC was untimely.

Second, as Plaintiff argues, his breach of contract claim also encompasses a breach of the contractual duty of good faith imposed under the Pennsylvania Commercial Code. See 13 Pa. Cons. Stat. § 1304 (providing that "[e]very contract or duty within this title imposes an obligation of good faith in its performance and enforcement."); John B. Conomos, Inc. v. Sun Co., Inc., 831 A.2d 696, 706 (Pa. Super. Ct. 2003) ("Pennsylvania courts impose a general duty of good faith performance on each party in general commercial contracts."). PNC concedes that it is bound by

4

this duty but contends that the Complaint has not pled any facts that are legally sufficient to establish that it acted without good faith or ordinary care.

The Commercial Code defines the duty of "good faith" as "[h]onesty in fact and the observance of reasonable commercial standards of fair dealing." 13 Pa. Cons. Stat. § 1201(b)(20). "The connotation of this standard is fairness and not absence of negligence." UCC Text Appendix Q § 4-406. Consistent with these definitions, cases recognizing a bank's duty of good faith have emphasized that a bank's mere negligent actions are insufficient to constitute bad faith. Rather, the bank must have acted with knowledge and/or malicious intent. Pavex, Inc. v. York Federal Savings & Loan Association, 716 A.2d 640, 645 (Pa. Super. Ct. 1998) (noting that "a bank's mere failure to follow commercially reasonable banking procedures or to comply with its own policies may not constitute bad faith").

At this early stage of litigation, the Complaint—while perhaps a bit thin—sets forth sufficient allegations to state a plausible claim that PNC acted without good faith. Plaintiff asserts that he reasonably expected PNC to be responsible for fraud monitoring yet failed to detect seven fraudulent paper checks and two electronic checks written for a total amount of over $200,000. PNC then made payment on the forged checks, which Plaintiff alleges was not "in good faith." Taking these facts as true, Plaintiff's Complaint allows a reasonable inference that PNC did not act in good faith or with ordinary care. Accordingly, I decline to dismiss the breach of contract claim at this time.[2]

---

[2] Plaintiff contends that his breach of contract claim also sets forth a claim for breach of an implied contract. It is well established, however, that "[t]here cannot be an implied-in-fact contract if there is an express contract that covers the same subject matter." Baer v. Chase, 392 F.3d 609, 616–17 (3d Cir. 2004). "In other words, express contract and implied-in-fact contract theories are mutually exclusive." Id.

Here, the Complaint pleads that Plaintiff "entered into a contractual relationship with PNC when he opened a personal checking account at PNC." (Compl. ¶ 17.) Plaintiff does not dispute the existence of this written Account Agreement. Accordingly, to the extent Plaintiff alleges breach of an implied contract, I will dismiss this claim.

B. **Negligence Claim**

Defendant next argues that Plaintiff's negligence claim must be dismissed pursuant to the Commercial Code's displacement of certain common law claims.[3]

When and whether common law claims are displaced by the Commercial Code is covered in section 1103, which states:

> Unless displaced by the particular provisions of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

13 Pa. Cons. Stat. § 1103(b). Comment two to that provision notes that "while principles of common law and equity may *supplement* provisions of the Uniform Commercial Code, they may not be used to *supplant* its provisions, or the purposes and policies those provisions reflect." Id. at cmt. 2 (emphasis in original). Thus, the Commercial Code displaces parallel common law claims where: (1) "[the Code] supplies a comprehensive remedy"; and (2) where "reliance on the common law would thwart the purposes of the Code." O'Neill, Bragg & Staffin, P.C. v. Bank of Am. Corp., No. 18-2109, 2018 WL 5921004, at *7 n.4 (E.D. Pa. Nov. 13, 2018) (quoting Envtl. Equip. & Serv. Co. v. Wachovia Bank, N.A., 741 F. Supp. 2d 705, 712–13 (E.D. Pa. 2010) (citing N.J. Bank, N.A. v. Bradford Sec. Operations, Inc., 690 F.2d 339, 345 (3d Cir. 1982))).

With respect to negligence claims, the Commercial Code establishes "an elaborate and comprehensive negligence regime." Envtl. Equip., 741 F. Supp. 2d at 713. Section 4401 "creates a general cause of action in negligence, allowing aggrieved customers to assert claims against

---

[3] Defendant also argues that this claim must be dismissed under the gist of the action and economic loss doctrines. As I find that the Commercial Code displaces this claim, I need not consider those arguments.

6

banks when banks charge items that are not properly payable against customer accounts." Id. (citing 13 Pa. Cons. Stat. § 4401).

"Section 4406 makes this regime even more intricate in cases of altered checks or forged drawer signatures when banks choose to provide their customers with account statements." Id. Specifically, § 4406 provides:

> **(c) Duty of customer.**—If a bank sends or makes available a statement of account or items pursuant to subsection (a), the customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized because of an alteration of an item or because a purported signature by or on behalf of the customer was not authorized. If, based on the statement or items provided, the customer should reasonably have discovered the unauthorized payment, the customer must promptly notify the bank of the relevant facts.

13 Pa. Cons. Stat. § 4406(c). Thus, the Code creates a cause of action sounding in negligence against a bank for improperly crediting items against an account but allows the bank to shift the loss onto the customer by proving that the customer failed to exercise ordinary care, promptly notify the bank, or exercise proper control over its employees. Envtl. Equip., 741 F. Supp. 2d at 713–14. The customer may, in turn, demonstrate how the bank's negligence contributed to its loss. Id.

Courts in this Circuit have held that the Code "displaces any negligence actions that are based on wrongfully paying a negotiable instrument 'to a person not entitled to enforce the instrument or receive payment.'" Gress v. PNC Bank, N.A., 100 F. Supp. 2d 289, 292 (E.D. Pa. 2000) (quoting 13 Pa. Cons. Stat. § 3420); see also Rideout v. Wells Fargo, No. 21-cv-3326, 2021 WL 4902344, at *14–15 (E.D. Pa. Oct. 21, 2021) (allegation of negligence by plaintiffs that bank allowed their mother to cash a forged settlement check is displaced by UCC); Mack v. CTC Ill. Trust. Co., No. 04-cv-00083, 2004 WL 1631398, at *4–5 (E.D. Pa. July 20, 2004) (negligence

claim premised on wrongful payment of check to a person not entitled to receive payment is preempted by UCC).

Here, Plaintiff does not dispute that his common law claim of negligence resulting from PNC's payment on forged checks falls squarely within the realm of claims displaced by the UCC. As such, to the extent the Complaint sets forth a common law negligence claim, it will be dismissed.

Plaintiff also asserts that this claim "is actually a claim in the alternative that PNC failed to exercise sufficient ordinary care and good faith as required under the UCC at 13 Pa. C. S. § 4406(e). Even though these statutory duties are made part of the implied contract between the parties by operation of law, Count II was labeled 'negligence' because the 'ordinary care' standard sounds in negligence." (Pl.'s Resp. Opp'n 7–8.)[4] I interpret this argument to mean that Plaintiff's negligence claim is simply a duplicate claim of the breach of contract claim (breach of the duty of good faith and ordinary care) set forth above. As such, this claim will be dismissed as well.

**C.  Conversion**

Finally, Defendant also asserts that Plaintiff's common law claim for conversion must be dismissed because it is displaced by the Code. As it is unclear whether the Complaint sets forth a common law or statutory claim of conversion, I will address both.

   1. Common Law Conversion

Under Pennsylvania law, common law conversion requires the "deprivation of another's right of property, or use or possession of a chattel, or other interference therewith, without the owner's consent and without legal justification." Universal Premium Acceptance Corp. v. York Bank & Trust Co., 69 F.3d 695, 704 (3d Cir. 1995) (quotations omitted). Plaintiff claims

---

[4] Notably, Plaintiff did not cite to the UCC in his negligence claim. As such, I surmise that Plaintiff has only pled a common law negligence claim.

that when PNC made payment on the Forged Checks without his knowledge or permission, it deprived him of his interest in the monies improperly paid to the holders of the Forged Checks. (Compl. ¶ 35.)

The Commercial Code squarely creates a remedy for this type of conversion claim. Section 3420 provides that:

> The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by the issuer or acceptor of the instrument or a payee or endorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a copayee.

13 Pa. Cons. Stat. § 3420(a).

"Thus, an action based on the deprivation of property, where that property is an instrument, is subsumed and displaced by section 3420." Bucci v. Wachovia Bank, N.A., 591 F. Supp. 2d 773, 780; see also Citizens Bank of Pa. v. Chevy Chase Bank, No. 03-5208, 2004 WL 875499, at *2 (E.D. Pa. Sept. 15, 2003) (finding that the plaintiff's common law claim for conversion was barred by the UCC); Gress v. PNC Bank, 100 F. Supp. 2d 289, 292 (E.D. Pa. 2000) (predicting that Pennsylvania courts would hold that common law claims for conversion, "insofar as they relate to conversion of a negotiable instrument," would be displaced by section 3420). As such, I will dismiss any common law conversion claim.

2. Statutory Conversion

To the extent Plaintiff pleads a statutory conversion claim, however I find that he plausibly states a claim for relief. Under 13 Pa.C.S. § 3420, an instrument is converted if "a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the payment or

9

receive payment." Id. § 3420(a).  The statute includes no required element of intent on the part of the bank.

The Complaint alleges that "[w]hen PNC made payment on the Forged Checks without [Plaintiff's] knowledge or permission, PNC thereby deprived [him] of his interest in the monies improperly paid to the holders of the Forged Checks." (Compl. ¶ 35.)  PNC's Motion concedes that this language "arguably states a claim for conversion under the UCC rather than common law." (Def.'s Mot. to Dismiss at 9 n.2.)  Accordingly, I decline to dismiss this claim.[5]

An appropriate Order follows.

---

[5]  In the alternative, Defendant requests that I require Plaintiff to submit a more definite statement of his claims.  As this Memorandum has narrowed the claims in the Complaint, a more definite statement is not required.